**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**VINEYARD SKY LLC,**

Plaintiff,

-against-

**43 WEST 64th STREET CONDOMINIUM, by its Board of Managers,**

Defendant.

Case No. 1:22-cv-4327

**COMPLAINT**

Plaintiff, by its attorney, Thomas Melone, as and for its complaint against the Defendant, the 43 West 64th Street Condominium, alleges:

**FACTS COMMON TO ALL CAUSES OF ACTION**

1. Defendant is a condominium association organized and existing pursuant to the laws of the State of New York (the "Condominium" or the "Defendant"). The Defendant operates the real property located at 43 West 64th Street, New York, NY 10023 (the "Property") through its Board of Managers (the "Board"). Defendant maintains an office at c/o Brown Harris Stevens Residential Management, 770 Lexington Avenue, New York, NY 10065.

2. Plaintiff, Vineyard Sky LLC ("Vineyard Sky"), was at all relevant times the owner of Unit 14A of the Condominium ("Unit 14A").

3. Defendant operates the Property pursuant to a contract among itself and the unit owners. That contract is embodied in the Condominium's By-Laws (the "Bylaws") and the Condominium declaration (the "Declaration") as the same have been duly amended and recorded from time to time.

4. The Defendant and the Board of Managers, and unit owners have agreed to be subject to and to comply with the provisions of the Declaration and the By-Laws. By virtue of the foregoing, Defendant and Plaintiff are each contractually bound by the Declaration and the By-Laws.

5. Defendant is authorized to charge Plaintiff and other unit owners fees and costs if those fees or costs are expressly authorized by the Declaration or the Bylaws.

6. Challenged herein are fees assessed against Plaintiff but not authorized by the Declaration or the Bylaws.

7. Those fees are a fee for Vineyard Sky leasing Unit 14A, a fee for the sale of Unit 14A, interest and late charges and legal fees purportedly incurred by the Defendant in connection with their illegally and contractually unauthorized assessment of fees against Plaintiff.

8. Defendant's breach of the Declaration and Bylaws and Defendant's bad faith and unlawful assessments damaged Plaintiff by causing Plaintiff Vineyard Sky to receive $237,094 less in net proceeds from the sale of Unit 14A, which sale occurred on May 25, 2022.

*The Invalid Subleasing Fee And Defendant's Breach of Contract*

9. In May 2020, Plaintiff Vineyard Sky executed a lease for Unit 14A to a third party. That lease provided for monthly rental payments equal to $30,000 per month. The Defendant assessed a fee against Plaintiff of $36,000, being 10% of the first year's annual rent. Plaintiff disputed that assessment and has continued to dispute that assessment because that assessment was not authorized under either the Declaration or the Bylaws.

10. Defendant claimed that in August 2016 and effective in September 2016, the Defendant adopted a fee that would be payable to the Defendant equal to 10% of the first year's annual rent for the *sublease* of any unit.

11. When Plaintiff disputed the Defendant's assessment against the lease of Unit 14A because a lease is not a sublease, Defendant then claimed that whether a lease was a sublease or a lease was semantics and that the policy requiring the payment of a 10% fee for subleases actually included leases as well. Plaintiff disputed that assertion.

12. Plaintiff also advised the Defendant that the purported lease fee was never properly adopted if it was supposed to apply to leases as opposed to subleases.

13. The purported meeting of the Board of Managers in August 2016 in which the purported lease fee was adopted was never properly noticed.

14. The purported meeting of the Board of Managers in August 2016 in which the purported lease fee was adopted excluded one Board member.

15. No minutes from the alleged meeting in August 2016 were ever prepared or approved.

16. At the time of Defendant's assessment of the lease fee against Plaintiff, no amendment to the Bylaws or Declaration was ever proposed to the unit owners, approved by the unit owners or recorded adopting such a fee. The purported subleasing/leasing fee was simply ineffective.

17. The Defendant's assessment of the leasing fee against Plaintiff was a material breach of the Declaration and the Bylaws and thus a material breach of contract between Plaintiff and Defendant.

18. After months of disputing the $36,000 assessment, and the Defendant's refusal to withdraw the assessment, Plaintiff suspended its performance under the Declaration and the Bylaws. Because Defendant had materially breached its obligations under the Declaration and Bylaws by making the invalid assessment, Plaintiff had the right to suspend its performance under

the contract (i.e., the Declaration and the Bylaws). *Restatement (Second) of Contracts* §237. The Plaintiff therefore ceased paying the monthly common charges during Defendant's material breach.

19. At no time since the Defendant's material breach of the Bylaws in May 2020 did the Defendant file any action or institute a proceeding seeking to collect the unlawful lease fee.

20. Undaunted by its failure to properly adopt a fee against unit owners for leasing their units, in an extraordinary showing of bad faith, the Defendant in June 2020 (i.e., after Plaintiff's lease of 14A had commenced), asked the unit owners to "confirm" the leasing policy purportedly adopted by the Defendant in 2016.

21. On June 24, 2020, the Board sent an email to unit owners stating:

> The consents we sent recently requesting approval for refinancing the superintendent's apartment and the lease fee have been tallied with more than 2/3 of the common interest in favor of the refinancing and in favor of the lease fee. Now officially approved, the closing on the mortgage is scheduled for June 30.
>
> Since more than 2/3 of the unit owner interests have consented to restatement of the lease fee policy and to a prospective amendment of the bylaws, the Lease Fee remains in effect. However, the current Board has determined not to proceed with an amendment to the bylaws at this time and can be reconsidered once the new Board is seated.

22. Two-thirds of the common interest and number of unit owners is the required vote for an amendment to the Bylaws under Article XIII of the Bylaws and under New York Real Property Law § 339-v.1(j).

23. Claiming it received the required number of votes for the "confirmation" for the lease fee "policy," the Defendant then asserted that the confirmation had *retroactive* effect against Plaintiff, and Defendant continued to wrongfully claim that the Defendant's assessment of a $36,000 leasing fee against Plaintiff was valid, thus continuing its material breach of the contract between Plaintiff and Defendant.

*The Defendant's Unauthorized Assessment of a Flip Tax Against 14A*

24. NY Real Property Law § 339-u plainly and unambiguously states: "The operation of the property shall be governed by by-laws, a true copy of which shall be annexed to the declaration. *No modification of or amendment to the by-laws shall be valid unless set forth in an amendment to the declaration and such amendment is duly recorded*." (Emphasis added.)

25. Similarly, Article 16 of the Declaration states: "No [duly adopted] amendment shall be effective until recorded in the New York County Office of the Register of the City New York."

26. On May 17, 2006, an amendment to the Declaration to reflect an amendment to the Bylaws was recorded against all units except for Unit 14A which provided for a 1% flip tax to be paid to the Defendant on the sale of any unit in the building, i.e., a fee equal to 1% of the sale price of a unit. The amendment was adopted on April 28, 2006, to add a new Article VIII, Section 14, and provides as follows:

> Section 14. Condition for issuance of certificate. With regard to a proposed sale, transfer, assignment, or other conveyance of a Residential Unit, as a condition for the issuance of a certificate stating that: (i) the Condominium has exercised, waived or terminated its right of first refusal pursuant to this Article, or (ii) the Condominium's right of first refusal does not apply pursuant to section 8 hereof, the purchaser, transferee, assignee or other conveyancee of a Residential Unit in the Condominium shall, at or prior to the closing of such purchase, transfer, assignment or other conveyance, pay to the Condominium a contribution to the reserve fund of the Condominium in an amount equal to ONE PERCENT (1%) of the purchase price or other consideration for such purchase, transfer, assignment, or other conveyance. Such payment shall be by certified check, official bank check or attorney's escrow check, or such other manner of payment as the Condominium shall authorize.

27. Plaintiff purchased Unit 14A in September 2006. The sponsor of the Condominium by deed dated September 14, 2006, transferred title to Unit 14A to Plaintiff.

28. Because the amended declaration that included the imposition of a 1% flip tax was never recorded, and is still not recorded, against Unit 14A, it is invalid under NY Real Property Law § 339-u against Unit 14A.

29. The enactment of Article VIII, Section 14 did not authorize any fee on leases. No amendment to the Declaration or Bylaws has been duly adopted and recorded regarding a fee on leases.

30. Upon information and belief, at some point the Defendant adopted an amendment to the Bylaws that would impose an optional additional 0.5% flip tax. That amendment was never recorded against any unit.

31. No amendment to the Declaration or Bylaws has ever been recorded against any unit authorizing a flip tax of 1.5%.

32. Because no amendment to the Bylaws has ever been recorded against Unit 14A authorizing any type of flip or transfer fee, under NY Real Property Law § 339-u, the flip tax of 1.5% is invalid as against Unit 14A and the Defendant's imposition of that fee was a breach of contract. Contractually Plaintiff is entitled to receive the entire refund of the 1.5% flip tax that was unlawfully assessed by the Defendant.

*The Defendant's Unauthorized Assessment For Legal Fees*

33. Section 6 of Article VI of the By-Laws provides that the Defendant can only make a claim for legal fees against a unit owner if and only if those fees were incurred "*in any proceeding brought to collect"* alleged unpaid Common Charges or assessments.

> Section 6. Default in Payment of Common Charges or Assessments. In the event of default by any Unit Owner in paying to the Board of Managers the Common Charges or any assessment as determined by the Board of Managers, such Unit Owner shall be obligated to pay interest at the highest legal rate on such Common Charges or assessments from the due date thereof, together with all expenses, including late fees charged by the Board of Managers and attorneys' fees incurred

> by the Board of Managers in any proceeding brought to collect such unpaid Common Charges or assessments. The Board of Managers shall have the right and duty to attempt to recover such Common Charges or assessments, together with interest thereon, and the expenses of the proceeding, including attorneys' fees, in an action to recover the same brought against such Unit Owner, or by foreclosure of the lien on such Unit granted by Section 339-z of the Real Property Law of the State of New York, in the manner provided in Section 339aa thereof. A Unit Owner defaulting in payment of Common Charges or assessments shall not be permitted to vote at any regular or special meeting of Unit Owners.

34. No proceeding was ever brought by the Defendant against the Plaintiff. Therefore, its claim that it is owed legal fees from Plaintiff is meritless and invalid.

35. All other fees, such as late fees and interest, were all related to Defendant's invalid assessments and are themselves a further breach of the contract between Plaintiff and Defendant.

36. None of the claimed monthly common charges were due because Plaintiff was entitled to suspend performance because of Defendant's material breach of the contract.

*Defendant's Intentional, Improper And Bad Faith Interference With Plaintiff's Sale Contract*

37. Plaintiff entered into a contract to sell Unit 14A to a third party on March 22, 2022.

38. Under the Bylaws, Article VIII, section 2, the Defendant has a right of first refusal to purchase a unit when the unit owner receives a bona fide offer for the purchase of its unit and such unit owner notifies the Defendant of same and of the unit owner's intention to sell. The Defendant's right to purchase can only be exercised with the approval of a majority of the Unit Owners. Bylaws Article VIII, section 3.

39. The Plaintiff provided notice to the Defendant via the form required by the Defendant for providing such notice, upon information and belief, on March 30, 2022.

40. The Bylaws provide that within twenty days after receipt of such notice, the Board may elect, by notice given within five days after making such election, and in any event, within

said twenty-day period, to such unit owner to purchase such unit on the same terms and conditions as contained in the third-party offer.

41. The Bylaws further provide that in the event the Board fails to notify the offering unit owner of its decision to accept such offer within twenty days after receipt of notice or notify the offering unit owner within said period of its decision not to accept such offer, the offering unit owner shall be free to contract to sell such Unit.

42. At no time did Defendant have a reasonable basis or a good faith belief that a majority of unit owners would approve the purchase of Unit 14A on the same terms as provided for in the contract entered into by Plaintiff on March 22, 2022.

43. At the time of the contract, and as of May 1, 2022, the Defendant still claimed that Plaintiff owed the Defendant the leasing fee of $36,000.

44. At the time of the contract and as of May 1, 2022, Defendant did not make any claim for interest charges or legal fees.

45. Clearly recognizing that Defendant had the ability to extort compliance with its wishes if the Plaintiff did not wish to have its sale contract interrupted, on May 2, 2022, the Defendant provided a notice to the Plaintiff and the third-party purchaser that Defendant would waive its right of first refusal only if specified conditions were met including the payment of the unauthorized leasing fee and the payment of a brand-new claim of purported legal fees and interest charges.

46. The Defendant's notice which fell far outside the twenty-day window for the Defendant's exercise of the right of first refusal was intended to indicate that the Defendant would treat the sale as invalid if the Plaintiff did not comply with the Defendant's illegal demands and demands furthering breaching the Declaration and the Bylaws.

47. The Defendant intentionally and improperly interfered with Plaintiff's contract for the sale of Unit 14A to a third-party by causing Plaintiff's performance to be more expensive and more burdensome. As a result of Defendant's intentional and improper interference, and material breach of contract, Plaintiff has been harmed because Plaintiff has received $237,094 less than it otherwise would have from the sale of Unit 14A.

48. Defendant is liable to Plaintiff in the amount of $237,094 plus statutory interest.

*Defendant's Disparagement of Plaintiff's Property*

49. On December 16, 2021, the Defendant recorded a lien in the office of the City Register of the City of New York, document 2021120801574001, in an amount of $80,593.92, claiming it was owed the $36,000 leasing fee and eight months of common charges plus $800 in late fees.

**Parties and Jurisdiction**.

50. Vineyard Sky LLC is a New York limited liability company, whose office is located in Delray Beach, Florida, and whose sole member is Thomas Melone, a citizen of the State of Florida.

51. Defendant is a condominium association organized and existing pursuant to the laws of the State of New York with its office in Manhattan.

52. This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. §1332 because this action is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Venue is appropriate in this district because the Defendant's principal place of business is located in this district and Defendant's actions occurred within this district.

53. Plaintiff is aggrieved and injured inasmuch as Defendant has breached its obligations under the Declaration and the Bylaws, has assessed fees against Plaintiff and Unit 14A that are unauthorized by law and unauthorized under the Declaration and Bylaws, and intentionally and improperly interfered with Plaintiff's contract to sell Unit 14A.

54. Plaintiff has suffered substantial damage and ascertainable financial loss as the result of Defendant's actions in the amount of $237,094.

55. A judgment in Plaintiff's favor invalidating the Defendant's claims for (a) a leasing fee in the amount of $36,000, (b) interest and late charges in the amount of $22,588, (c) legal fees in the amount breach of $39,756, and (d) the flip tax of $138,750, and ordering a return of those fees would redress Plaintiff's injury and result in Plaintiff receiving $237,094 to compensate it for the Defendant's tortious actions and breach of contract.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

56. Plaintiff repeats and reiterates paragraphs 1 through 55 above as if fully set forth herein.

57. Defendant has assessed Plaintiff and Unit 14A for the following invalid fees: (a) fa leasing fee in the amount of $36,000, (b) interest and late charges in the amount of $22,588, (c) legal fees in the amount breach of $39,756, and (d) the flip tax of $138,750.

58. Plaintiff has been harmed by Defendant's breach of contract by assessing invalid fees and charges because the Defendant's invalid and charges fees have resulted in Plaintiff receiving $237,094 less from the sale of Unit 14A then it otherwise would have.

59. Defendant is liable to pay to Plaintiff all the invalid fees and charges which in total equal $237,094 plus interest at the statutory rate.

**SECOND CAUSE OF ACTION**
**(Breach of Covenant of Good Faith and Fair Dealing)**

60. Plaintiff repeats and reiterates paragraphs 1 through 59 hereof as if fully set forth herein.

61. Plaintiff fully performed all of its obligations under the Declaration and the Bylaws, or has been excused from performance by the Defendant's material breach of the Declaration and the Bylaws. Defendant breached its obligations under the Declaration and Bylaws by assessing the unauthorized leasing fee, the unauthorized flip tax and the unauthorized legal fees, late fees and interest charges.

62. There is implied in every contract a covenant of good faith and fair dealing that neither party will do anything deliberately to deprive the other of the benefits of the agreement. Plaintiff has complied with its obligation of good faith and fair dealing under the Declaration and the Bylaws. Defendant has breached its obligation of good faith and fair dealing by intentionally and improperly interfering with Plaintiff's right to receive benefits of the Declaration and the Bylaws in a number of ways, including, by way of example and without limitation, the following: (1) by improperly assessing (a) a leasing fee in the amount of $36,000, (b) interest and late charges in the amount of $22,588, (c) legal fees in the amount breach of $39,756, and (d) the flip tax of $138,750, (2) by holding unnoticed meetings of the Board of Managers, (3) by seeking to retroactively assess a leasing fee, and (4) by abusing it right of first refusal in order to intentionally and improperly interfere with Plaintiff's contract for the sale of Unit 14A.

63. As a direct and proximate result of Defendant's breach, Plaintiff has been deprived of the benefits of the Declaration and the Bylaws, and has suffered damages in an amount $237,094.

64. Therefore, Defendant is liable to pay to Plaintiff the total amount of $237,094 plus interest at the statutory rate.

**THIRD CAUSE OF ACTION**
**(Intentional and Improper Interference With Contract)**

65. Plaintiff repeats and reiterates paragraphs 1 through 64 hereof as if fully set forth herein.

66. One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

67. Defendant interfered with Plaintiff's ability to perform its contract with the purchaser of Unit 14A through improper motive or means and as a result Plaintiff received $237,094 less from the sale of Unit 14A as a result of the Defendant's improper and intentional interference.

68. Therefore, Defendant is liable to pay to Plaintiff the total amount of $237,094 plus interest at the statutory rate.

**FOURTH CAUSE OF ACTION**
**(Violation of Criminal Usury Statute—Penal Law section 190.40)**

69. Plaintiff repeats and reiterates paragraphs 1 through 68 hereof as if fully set forth herein.

70. New York Penal Law section 190.40 makes a person guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on a loan or forbearance of any money

or other property, at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period.

71. After months of disputing the $36,000 lease fee assessment, and the Defendant's refusal to withdraw the assessment, Plaintiff suspended its performance under the Declaration and the Bylaws. Because Defendant had materially breached its obligations under the Declaration and Bylaws by making the invalid assessment, Plaintiff had the right to suspend its performance under the contract (i.e., the Declaration and the Bylaws). *Restatement (Second) of Contracts* §237. The Plaintiff therefore ceased paying the monthly common charges during Defendant's material breach.

72. The unpaid monthly common charges did not, and could not, become due during Defendant's material breach of contract as a matter of contract law.

73. Defendant's statement of account dated May 1, 2022, did not assess any interest on the unpaid but not due accrued common charges.

74. As part of Defendant's bad faith conduct related to the closing of the sale by Plaintiff of Unit 14A, Defendant assessed interest charges on the unpaid but not due accrued common charges as well as the other amounts Defendant wrongfully claimed it was due.

75. As part of Defendant's bad faith conduct related to the closing of the sale by Plaintiff of Unit 14A, Defendant required the collection of those unpaid but not due accrued common charges plus an interest rate of 16% calculated from the date the Defendant claimed such charges were due, which did not recognize Plaintiff's right to suspend performance due to Defendant's material breach of the contract.

76. The effective interest rate assessed on the unpaid but not due accrued common charges far exceeded the 25% per annum rate specified in New York Penal Law section 190.40.

77. As a result, Defendant forfeited it rights to the unpaid but not due accrued common charges.

78. Defendant is therefore liable to return the full amount of those common charges of $119,482.15 that the Defendant extracted at the closing of the sale of Unit 14A. *Adar Bays, LLC v. GeneSYS ID, Inc*., 37 N.Y.3d 320 (2021).

**FIFTH CAUSE OF ACTION**
**(Disparagement of Property)**

79. Plaintiff repeats and reiterates paragraphs 1 through 78 hereof as if fully set forth herein.

80. On December 16, 2021, the Defendant recorded a lien against Unit 14A in the office of the City Register of the City of New York, document 2021120801574001 (the "Lien"), in an amount of $80,593.92, claiming it was owed the $36,000 leasing fee and eight months of common charges plus $800 in late fees.

81. The Lien constitutes a communication that disparages Plaintiff's property to Unit 14A because no leasing fee was due for the reasons stated above and no common charges were due because Plaintiff was entitled to suspend its performance under the Declaration and Bylaws during Defendant's material breach.

82. The Defendant intended the filing of the Lien to cause harm to Plaintiff by causing Plaintiff to incur costs to counteract the improper Lien filing.

83. The Lien resulted in special damages to Plaintiff because Plaintiff incurred legal fees and costs in order to counteract and remove the Lien.

84. Plaintiff has incurred special damages of $6,600 proximately caused by Defendant's filing of the Lien.

**WHEREFORE,** Plaintiff respectfully request that judgment be entered in its favor and against Defendant as follows:

a) On the First, Second and Third causes of action, damages in the amount of $237,094;

b) On the Fourth cause of action, damages in the amount of $119,482.15;

c) On the Fifth cause of action, damages in the amount of $6,600;

d) On all causes of actions, for pre-judgment and post-judgment interest at the highest statutory rate;

e) On all causes of actions, for Plaintiff's attorney's fees incurred in this proceeding; and

f) On all causes of actions, for such other and further relief as may be just and proper, including punitive damages for Defendant's tortious and improper conduct.

Dated: May 25, 2022

*/s/Thomas Melone*
Thomas Melone
Allco Renewable Energy Limited
157 Church St., 19th floor
New Haven, CT 06510
Phone: (212) 681-1120
Email: Thomas.Melone@AllcoUS.com
*Attorney for Plaintiff*